IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 3, 2024 Session

## STATE OF TENNESSEE v. JOSE S. LOREDO (IN RE: A CLOSE BONDING CO. LLC, SURETY)

**Appeal from the Circuit Court for Madison County**
**No. 21-598   Donald H. Allen, Judge**

_____

### No. W2023-00088-CCA-R3-CD

_____

The Appellant, A Close Bonding Co., LLC, acting as the bail bond surety in the criminal case of the Defendant, Jose S. Loredo, appeals the Madison County Circuit Court's denial of the Appellant's motion to recuse and motion to set aside final forfeiture of the Defendant's bond.  Based upon the oral arguments, the record, and the parties' briefs, we conclude that the trial court did not err and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR. J., delivered the opinion of the court, in which J. ROSS DYER and MATTHEW J. WILSON, JJ., joined.

Joel H. Moseley, Jr., Murfreesboro, Tennessee, for the appellant, A Close Bonding Co., LLC.

Jonathan Skrmetti, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Matt Floyd, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### <u>FACTS</u>

On November 1, 2021, the Madison County Grand Jury indicted the Defendant for three counts of rape of a child and one count of continuous sexual abuse of a child.  On January 7, 2022, the Defendant filed a motion to set bond so that he could be released from the Madison County Jail.  Three days later, the trial court set bond at $150,000, and the Defendant posted bond with the Appellant as the surety.

The Defendant failed to appear in court on February 28, 2022, so the trial court entered a conditional judgment of forfeiture and issued a capias for the Defendant's arrest. The trial court also issued a writ of scire facias, notifying the Appellant that a conditional judgment had been entered and that the conditional judgment would become final "unless you appear within one-hundred-eighty days and show cause to the contrary." On August 22, 2022, as the end of the one hundred eighty days approached, the Appellant filed a motion for additional time to locate and surrender the Defendant.

The trial court held a hearing on the motion for additional time on August 29, 2022. During the hearing, Kimberly Alexander testified that she owned A Close Bonding Co., LLC. In May 2022, Ms. Alexander's bail enforcement agent and the United States Marshals Service located the Defendant in Mexico. However, a United States Marshal advised Ms. Alexander that because the Defendant was a dual citizen of Mexico and the United States, a provisional arrest warrant ("PAW") was needed to return him to Tennessee. The United States Marshal told Ms. Alexander that he already had submitted a request for the PAW. On August 22, 2022, Ms. Alexander contacted the United States Marshal for an update on the PAW and asked if there was anything she could do to assist the process. The United States Marshal told her that the Madison County District Attorney General's Office was responsible for obtaining the PAW, that he had requested an update from the district attorney general's office, and that he had not received a response.

Ms. Alexander testified that the Defendant was still in Mexico and that he had been there since at least May 17, 2022. She said that as soon as the PAW was issued, "we'll get him back." She acknowledged that she was requesting more time to procure the Defendant.

Upon being questioned by the trial court, Ms. Alexander testified that the writ of scire facias was served on the Appellant on March 16, 2022. She acknowledged that the Appellant had one hundred eighty days from that date to produce the Defendant "or face the possibility of paying that bond."

The trial court calculated that the one hundred eighty days would "run" about September 16, 2022, and said that it was going to set a final forfeiture hearing for September 19, 2022. The trial court stated, "[S]he'll either have to produce the body of Mr. Jose Loredo or I'm going to enter a final forfeiture against the bonding company on that date. . . . So that gives her a couple more weeks or so to hopefully locate the defendant."

On September 9, 2022, the Appellant filed a motion to recuse the trial court judge, Donald H. Allen, from any further consideration of the Appellant's liability on the bond. In the motion, the Appellant alleged the following: The Appellant was the surety for a $25,000 bond for another defendant, Marcus Kinnon. On September 6, 2022, Judge Allen

- 2 -

rendered a final forfeit judgment on Mr. Kinnon's $25,000 bond. Two days later and prior to entry of the judgment, Judge Allen threatened to suspend the Appellant from writing bonds in the 26th Judicial District if the Appellant did not pay the $25,000 final forfeiture amount immediately. It also was "reported" to the Appellant that Judge Allen said the Appellant "had better bring the full payment for the *State v. Loredo* matter when the matter would be heard on Monday, September 19, 2022." The Appellant alleged in the motion to recuse that Judge Allen's actions "evidenced a distinct bias" against the Appellant and violated the automatic thirty-day stay for payment of the forfeited bond provided by Tennessee Rule of Civil Procedure 62.01, Tennessee Code Annotated section 40-11-139(c), and Rule 11 of the Circuit Court Bonding Rules for the 26th Judicial District. The Appellant said in the motion to recuse that it paid the $25,000 under protest and appealed the matter and that it expected Judge Allen to act in a similar manner against the Appellant at the final forfeiture hearing on September 19, 2022.

On September 16, 2022, Ms. Alexander filed a two-page statement in support of the motion to recuse. In her statement, Ms. Alexander essentially repeated the facts that were alleged in the motion to recuse.

At the outset of the final forfeiture hearing on September 19, 2022, counsel for the Defendant advised the trial court that he lost contact with the Defendant in February 2022 and that he had not "seen hide nor hair" of the Defendant. The trial court asked, "So, are we prepared to go forward then on the motion for final forfeiture? Is that what this is?" Counsel for the Appellant responded, "Well, Your Honor, that's the State's call as to whether or not they are going to go forward on final forfeiture or not." The State said that it wanted to proceed with final forfeiture, so Appellant's counsel advised the trial court that the Appellant had witnesses to present.

At that point, Appellant's counsel reminded the trial court that the Appellant had filed a motion to recuse and that the motion was based on "[c]onversations that apparently arose in the clerk's office with regard to Your Honor's instructions to the clerk with regard to *State v. Kinnon*." The following colloquy then occurred:

> THE COURT: I didn't instruct the clerk to do anything other than what we did in court. I didn't instruct the clerk to do anything other than what I ruled in court.

> [Appellant's counsel]: With regard to the collections of the *State v. Kinnon* matter? What my client was told was that Your Honor had ordered immediate payment of *State v. Kinnon* and --

THE COURT: Well, I mean, [Ms. Alexander] was in court the day we had the hearing on the Marcus Kinnon case; correct?

[Appellant's counsel]: That's correct, Your Honor.

. . . .

THE COURT: I show that the clerk's office on August the 5th of this year sent a letter apparently to the representative, I guess, Robert McKinley, is he one of the bonding agents of [the Appellant]?

[Appellant's counsel]: He is an agent. Yes, Your Honor.

. . . .

THE COURT: Well, I mean we always ask the clerk to send notice to the bonding company before any kind of final forfeiture takes place. I mean, we always do that. We give the bonding company notice. Apparently --

[Appellant's counsel]: We certainly don't object to the notice, Your Honor, it's the ten day payment period that we object to.

. . . .

THE COURT: Okay. Yeah. September 8th was the date the order was entered by the clerk. Okay. So you had 30 days from that date to pay that [$25,000].

[Appellant's counsel]: And, Your Honor, what was communicated to my client was from Gail Mooney, the current circuit court clerk, is that Your Honor had demanded immediate payment or otherwise my client would be suspended from writing bonds in --

THE COURT: I've made no efforts to try to suspend the bonding company. I've taken no efforts to suspend the bonding company.

[Appellant's counsel]: Well, Your Honor, my client paid under protest based upon the recommendations made by the clerk.

- 4 -

THE COURT: I mean, I didn't try to suspend her privileges from writing bonds.

[Appellant's counsel]: Well, if Your Honor says he didn't make that request and didn't have that discussion with them then I certainly would not disagree with Your Honor.

THE COURT: Okay. All right. So your bonding company paid the bond in protest?

[Appellant's counsel]: Yes, Your Honor. Because it was demanded prior to the expiration of that 30 day period of time.

THE COURT: Okay. Well, I mean, obviously she has 30 days from the date that the order is entered to pay the final forfeiture.

[Appellant's counsel]: Correct, Your Honor.

THE COURT: So I mean, do you want me to order the clerk to give the $25,000 back to her and then we can wait until the 30 day period has passed and then see where we are at that point? I don't mind doing that.

[Appellant's counsel]: Your Honor, that would certainly be appreciative.

The issue, however, as it relates to the Loredo matter was, again, this is what was communicated to my client was that the statement was made that she would be required to pay today if Your Honor entered the final forfeiture.

THE COURT: I never said that she was going to have to pay it today. Today is the hearing day. I didn't expect her to come in here with $150,000 to pay.

[Appellant's counsel]: I'm pleased to hear that, Your Honor. Again, this is what was communicated to my client.

THE COURT: Okay. Well, I mean, I'm sorry if there's some confusion on your client's part from the clerk's office, but today is the hearing on the final forfeiture on the Loredo matter.

[Appellant's counsel]: Yes, Your Honor.

. . . .

[Appellant's counsel]: And Your Honor has made the representation that the statement[s] that were communicated to my client are not truthful statements and based upon that then certainly we would --

THE COURT: Apparently there's miscommunication between your client, Ms. Alexander, and what the clerk's office has instructed. Anything that I say, I say in court. Okay? I'm giving you what you're asking for. I'm giving until I guess 30 days after that September 8th date to pay whatever the final forfeiture is. I've never made any efforts to try to take Ms. Alexander off of the bonding list.

[Appellant's counsel]: Thank you, Your Honor.

THE COURT: I mean, that's not my intent.

[Appellant's counsel]: I appreciate that, Your Honor.

THE COURT: Now, are we ready to go forward then on the *Loredo* matter?

[Appellant's counsel]: Yes, Your Honor. I believe we are.

Counsel for the Appellant called Ms. Alexander to testify. Ms. Alexander stated that the Defendant had been located in Legado, Mexico, and that the Appellant had been working "on and off" with the United States Marshals Service to return him to Tennessee. When the Appellant agreed to act as the surety on the Defendant's bond, the Defendant owned a roofing company and had been in the United States for fifteen to twenty years. Ms. Alexander checked his references, required four cosigners on his bond, and made inquiries about his roofing company. The Defendant's ex-wife and children were "here," and Ms. Alexander was comfortable with the Appellant acting as the surety on his bond. The Defendant was required to check in weekly with the Appellant, and Ms. Alexander saw him the week before he failed to appear in court. When he failed to appear, the Appellant began contacting his indemnitors, but no one had seen him. In March or April, Ms. Alexander learned the Defendant may be in Mexico. She contacted a bail enforcement agent she had worked with previously, and he was able to verify with the Mexican military in April or May that the Defendant was in Mexico.

Ms. Alexander testified that the Defendant was her first client with dual citizenship to flee to Mexico; therefore, she was unfamiliar with the process of returning him to the

United States. She learned the State would have to obtain a PAW, and the governments for Mexico and the United States told her that she would be arrested immediately if she "touched" the Defendant without a PAW. At the time of the final forfeiture hearing, the Defendant was still in Mexico. Ms. Alexander stated that the easiest and most economical way to procure the Defendant was via the PAW and that she recently had informed the district attorney general's office the Appellant would pay the expenses for returning the Defendant to Tennessee. She said she was just waiting on the PAW to be signed so the Defendant could be arrested in Mexico.

On cross-examination, Ms. Alexander testified that when the Appellant agreed to serve as the surety on the Defendant's bond, she knew that he had been born in Mexico but that he was a United States citizen. Ms. Alexander made him surrender his passport to her as a condition of his bond. However, she did not consider that he also could be a citizen of Mexico. She said that she still did not know what needed to be done to obtain a PAW.

General Jody Pickens testified for the Appellant that he was the District Attorney for the 26th Judicial District and that he was "[v]aguely" familiar with the Defendant's case. He said that emails exchanged between his office and representatives from the Tennessee Department of Correction and the United States Marshals Service related to the Defendant's "extradition" from Mexico and showed that "steps" had been taken to return the Defendant to Tennessee. General Pickens said that he did not understand much of the content of the emails but that he had no reason to think his office was not still trying to procure the Defendant. General Pickens stated, "Quite honestly in my 26 years in practice this is the only time I think we've had an international extradition or attempt at it." He said he did not know how long the process would take.

The Appellant introduced the emails into evidence. The emails, which we have reviewed, show as follows: On May 23, 2022, Special Agent Joseph Frye with the Tennessee Department of Correction's Apprehension and Enforcement Unit had a "good location" for the Defendant in Santiago de Queretaro, Mexico, and the district attorney general's office was going to begin the process of obtaining a PAW. On August 10, 2022, Special Agent Frye had a "general location" for the Defendant in Mexico; the State was pursuing a PAW to have the Defendant arrested and extradited "from there"; and an extradition request had been submitted to the Department of Justice ("DOJ"). That same day, Agent Frye requested that the DOJ issue a Wanted Person Diffusion to all of Interpol's 195-member countries.[1] The DOJ advised Agent Frye that issuing a Wanted Person Diffusion to Mexico could interfere with the extradition process in Mexico. In response,

---

[1] "Interpol is the common name of the International Criminal Police Organization." *Lehman v. Lucom*, 727 F.3d 1326, 1329 (11th Cir. 2013).

Special Agent Frye requested that the DOJ issue a Wanted Person Diffusion to all countries except Mexico, and the DOJ agreed to do so.[2]

At the conclusion of General Pickens's testimony, the State advised the trial court, "This is not a situation where the State has just simply been dragging its feet, Your Honor. It's a situation where this is going to take longer than 180 days." The State asserted that the Appellant knew the Defendant was a flight risk when the Appellant agreed to act as the surety on the $150,000 bond and requested that the trial court order final forfeiture. Counsel for the Appellant argued that the process to return the Defendant was ongoing, that the Appellant was "entitled to additional time so that [the] State can complete its work" to procure the Defendant, and that the State's request for final forfeiture was premature. The trial court asked counsel for the Appellant if the Appellant had an address for the Defendant or if the Appellant knew exactly where the Defendant was located in Mexico. Appellant's counsel responded that the testimony did not show "one way or the other" whether the Appellant knew of the Defendant's exact location. Nevertheless, counsel for the Appellant requested that the trial court stay the final forfeiture while the State attempted to obtain a PAW pursuant to federal law.

At the conclusion of the hearing, the trial court found that more than one hundred eighty days had passed since the Appellant had been served with the writ of scare facis and that the Appellant had not produced the Defendant. The trial court stated that "it appears to the Court that the defendant has not been apprehended and is not in custody anywhere as best the proof presented." The trial court granted the State's request for final forfeiture and noted that the Appellant would have thirty days to pay the forfeited amount.[3] Finally, the trial court stated that it was denying the Appellant's motion to recuse.

On September 28, 2022, the trial court entered an order of final forfeiture. On October 27, 2022, the Appellant filed a motion to set aside final forfeiture. In the motion, the Appellant asserted that no written order disposing of the motion to recuse had been entered; therefore, the motion to recuse was still pending, the trial court could not take further action in the case, and the order of final forfeiture was premature. On November 30, 2022, the trial court entered a brief order nunc pro tunc denying the motion to recuse.

---

[2] A Wanted Person Diffusion "may be sent to select countries to obtain assistance in locating, arresting and detaining a wanted subject." *United States v. Khoury*, No. 4:08-CR-0763, 2019 WL 6687715, at *1 (S.D. Tex. Dec. 6, 2019) (citing About Notices, INTERPOL, https://www.interpol.int/How-we-work/Notices/About-Notices (last visited Sept. 25, 2019)).

[3] At oral arguments, counsel for the Appellant advised this court that the Defendant had been returned to Tennessee and that the forfeited bond had not been paid pending appeal.

On December 14, 2022, the trial court held a hearing on the Appellant's motion to set aside final forfeiture. At the hearing, counsel for the Appellant argued that the court could not order final forfeiture of the Defendant's bond because the trial court failed to enter a written order denying the motion to recuse as required by Tennessee Supreme Court Rule 10. The trial court asked, "So you didn't want me hearing the motion concerning the final forfeiture[?]" Appellant's counsel answered, "Correct, Your Honor." The trial court advised counsel for the Appellant that a written order denying the Appellant's motion to recuse was entered on November 30, 2023, after the Appellant filed its motion to set aside final forfeiture. Counsel for the Appellant informed the trial court that he never received a copy of the order and that the issue regarding the trial court's failure to enter a written order "has now been cured." Thus, the trial court orally denied the Appellant's motion to set aside final forfeiture. On December 19, 2022, the trial court entered a written order denying the motion to set aside final forfeiture, stating that because the trial court had entered a written order denying the motion to recuse, the Appellant's motion to set aside final forfeiture was moot. On appeal, the Appellant challenges trial court's denial of the motions to recuse and set aside final forfeiture.

## ANALYSIS

### I. Motion to Recuse

The Appellant contends that the trial court erred by denying the Appellant's motion to recuse because the record demonstrated that the trial court was biased against the Appellant. The Appellant also contends that the trial court could not order final forfeiture of the Defendant's bond because the trial court failed to enter a written order specifying the trial court's reasons for denying the Appellant's motion to recuse as required by Tennessee Supreme Court Rule 10B. The State argues that the Appellant has waived any issue regarding the motion to recuse because the motion was not supported by an affidavit and did not include an affirmative statement regarding the motion's purpose and that, in any event, the trial court did not err by denying the motion because the Appellant failed to show bias by the trial judge. We agree with the State that the Appellant is not entitled to relief.

Tennessee Supreme Court Rule 10B provides, in pertinent part, as follows:

1.01. Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a written motion filed promptly after a party learns or reasonably should have learned of the facts establishing the basis for recusal. The motion shall be filed no later than ten days before trial, absent a showing of good cause which must be supported

by an affidavit. The motion shall be supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge and by other appropriate materials. The motion shall state, with specificity, all factual and legal grounds supporting disqualification of the judge and shall affirmatively state that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. A party who is represented by counsel is not permitted to file a pro se motion under this rule. Any subsequent motion under this section filed in the same case must state, with specificity, substantially different factual and legal grounds than those relied upon in support of a prior motion filed under this section. If a party fails to satisfy this requirement, the subsequent motion may be deemed repetitive and summarily denied as provided in section 1.03.

1.02. While the motion is pending, the judge whose disqualification is sought shall make no further orders and take no further action on the case, except for good cause stated in the order in which such action is taken.

1.03. Upon the filing of a motion pursuant to section 1.01, the judge shall act promptly by written order and either grant or deny the motion. If the motion is denied, the judge shall state in writing the grounds upon which he or she denies the motion.

Tennessee Supreme Court Rule 10, section 2.11(A) states, "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" Whether the judge erred by denying the motion to recuse himself or herself is a question of law, which we review de novo. *Cook v. State*, 606 S.W.3d 247, 253 (Tenn. 2020) (citing Tenn. Sup. Ct. R. 10B, § 2.01).

Addressing first the State's waiver argument, we note that Ms. Alexander's statement in support of the motion to recuse was not notarized. However, the first page of the statement provided that the information in the statement was based on Ms. Alexander's "own knowledge unless otherwise stated." Additionally, the following declaration appeared on the second page of the statement, just above Ms. Alexander's signature: "In accordance with Tenn. R. Civ. P. 72, I declare under penalty of perjury that the foregoing is true and correct."[4] Moreover, although the Appellant did not file Ms. Alexander's statement contemporaneously with the motion to recuse, the Appellant filed the motion

---

[4] Tennessee Rule of Civil Procedure 72 provides: "Whenever these rules require or permit an affidavit or sworn declaration, an unsworn declaration made under penalty of perjury may be filed in lieu of an affidavit or sworn declaration." The declarant must sign and date the declaration, and the declaration must substantially state: "'I declare (certify, verify or state) under penalty of perjury that the foregoing is true and correct.'" Tenn. R. Civ. P. 72.

prior to the forfeiture hearing during which the trial court addressed the motion to recuse. Therefore, we disagree with the State's argument that the recusal issue is waived because the motion to recuse was not supported by affidavit.

As the State correctly points out, though, the motion to recuse did not include an affirmative statement that it was not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. The affirmative statement was mandatory under Tennessee Supreme Court Rule 10B, and a defective motion can result in waiver of the recusal issue. *See Elliott v. Elliott*, No. E2012-02448-COA-10B-CV, 2012 WL 5990268, at *3 (Tenn. Ct. App. Nov. 30, 2012).

Regardless, even if we were to conclude that the issue is not waived, the trial court addressed the motion to recuse prior to addressing the final forfeiture. The trial court denied telling the circuit court clerk that the Appellant would have to pay the forfeited bond amount immediately and stated that it had never tried to suspend the Appellant from executing bonds. The trial court characterized the information the Appellant received from the circuit court clerk as a "miscommunication," and the Appellant accepted the trial court's explanation. The trial court then asked if the Appellant was ready to proceed with the final forfeiture hearing, and counsel for the Appellant said yes. Furthermore, at the end of the proceeding, there was an exchange between the trial court and counsel about the basis of the recusal motion where counsel stated:

> The issue was the communication she was receiving from the clerk's office regarding how this matter was to be paid. It appears that based upon Your Honor's statement and representation that that was miscommunication.

Therefore, we think the Appellant effectively withdrew its motion to recuse from further consideration by the trial court.

We note that the trial court ultimately filed an order denying the motion to recuse. In the order, the trial court stated the matter was heard on September 19, 2022, and that "based on the findings of facts and statements of law made in court, the motion was denied." Although the Appellant contends that the order did not satisfy Tennessee Supreme Court Rule 10, "[a] trial court's oral pronouncements, if made a part of the written judgment through incorporation by reference, become a part of the judgment and reviewable as such" and are "sufficient to meet the requirements of section 1.03 of Rule 10B." *Harcrow v. Harcrow*, No. M2019-00353-COA-T10B-CV, 2019 WL 1397085, at *3 (Tenn. Ct. App. Mar. 27, 2019). For all these reasons, we conclude that the Appellant is not entitled to relief on this issue.

## II. Final Forfeiture

The Appellant contends that the trial court erred by denying the Appellant's motion to set aside final forfeiture of the Defendant's bond without giving the Appellant more time to produce the Defendant because the State was in the process of extraditing him from Mexico at the time of the final forfeiture hearing. The Appellant asserts that the State should not seek final forfeiture while extradition is pending. The State argues that the trial court did not abuse its discretion by entering a judgment of final forfeiture because the Appellant was still in Mexico at the time of the final forfeiture hearing, the Appellant only claimed at the hearing that a provisional arrest warrant was being sought to return the Defendant to Tennessee, and the Appellant could not make credible assurances to the trial court that the Defendant would be produced if given additional time. We agree with the State that the trial court did not did not abuse its discretion.

A bail bond is a contract between the State on one side and a defendant and the surety on the other side, "whereby the surety assumes custody of the defendant and guarantees to the State either the appearance of the defendant in court or the payment of the full amount of the bail set by the court." *In re Sanford & Sons Bail Bonds, Inc.*, 96 S.W.3d 199, 202 (Tenn. Crim. App. 2002). Because there is a risk that the defendant will leave the jurisdiction or refuse to appear in court, "the bondsman must be thorough not only in assessing the risk of flight before writing the bond, but in keeping tabs on the defendant after the bond is written." *Id.* (quoting Holly J. Joiner, Note, *Private Police: Defending the Power of Professional Bail Bondsmen*, 32 Ind. L. Rev. 1413, 1422 (1999)).

Here, the Defendant secured his release after arrest by entering into a surety agreement with the Appellant pursuant to Tennessee Code Annotated section 40-11-122(3). "If the defendant whose release is secured under § 40-11-122 does not comply with the conditions of the bail bond, the court having jurisdiction shall enter an order declaring the bail to be forfeited." Tenn. Code Ann. § 40-11-139(a). This court reviews determinations regarding matters of bond forfeitures and requests for relief from bond forfeitures under an abuse of discretion standard. *In re Rader Bonding Co.*, 592 S.W.3d 852, 858 (Tenn. 2019); *see State v. Shredeh*, 909 S.W.2d 833, 835 (Tenn. Crim. App. 1995). "An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is illogical or unreasonable and causes an injustice to the party complaining." *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007) (internal quotation and citation omitted). As this court has stated,

> Because the surety has entered into an agreement to assure the presence of the defendant thereby assuming calculated risk in the ordinary course of business, it can rarely be said that the trial court has abused its discretion by enforcing the terms when there has been a breach of the contract.

*State v. Truitt*, No. M2005-01226-CCA-R3-CD, 2006 WL 2738876, at *4 (Tenn. Crim. App. Sept. 21, 2006).

Tennessee Code Annotated section 40-11-201 through section 40-11-215 governs the forfeiture of bail bonds. Specifically,

> Tenn. Code Ann. § 40-11-201(a) (1997) authorizes a trial court to enter a conditional judgment of forfeiture against a defendant and his sureties when a defendant fails to appear in court in accordance with a bail bond agreement. Upon the entry of a conditional judgment, the trial court must additionally issue a writ of scire facias requiring the defendant and his sureties to show cause why the judgment should not become final. Tenn. Code Ann. § 40-11-202 (1997). To this end, the trial court must afford the defendant and his sureties a hearing prior to final forfeiture. *Indemnity Ins. Co. of North America v. Blackwell*, 653 S.W.2d 262, 264 (Tenn. App. 1983). At this hearing, a surety or bonding company may petition the court for relief from forfeiture. However, the surety bears the burden of proving that its petition should be granted. *See, e.g.*, *State v. Roger Martin/Liberty Bail Bond Company*, No. 02C01-9710-CR-00402, 1998 WL 414713, at *2 (Tenn. Crim. App. at Jackson, July 24, 1998).

*In re Paul's Bonding Co.*, 62 S.W.3d 187, 193 (Tenn. Crim. App. 2001).

In support of the Appellant's argument that final forfeiture of a bond is premature while extradition is pending, the Appellant relies on certain language in Tennessee Code Annotated section 40-11-201(c), which we have emphasized:

> **The appearance or bail bond shall remain in full force and effect** until the principal is physically or mentally able to appear, or **until a detainer against the principal is filed with the detaining authority. On the filing of a detainer, the bondsman and sureties shall remain liable for the expenses of returning the principal to this jurisdiction for trial when the principal is released by the detaining authority.** If the detainer request is refused or if the detaining authority releases the principal notwithstanding the filing of the detainer, the surety shall not be liable in the undertaking. It shall be the duty of the bondsman or surety to present to the presiding court, in a timely manner, all appropriate documentation evidencing that the detainer was properly filed or refused, or that the detaining authority released the principal notwithstanding the filing of the detainer. The liability of any bondsman or surety shall not exceed the amount of the bail bond. After trial, however, if it is necessary to return the principal to the detaining authority in

- 13 -

another jurisdiction, all expenses incurred in the return shall be paid by the state of Tennessee. **As used in this subsection (c), "detainer" includes any means of requesting a defendant be returned to this jurisdiction, including, but not limited to, a detainer, habeas corpus, or extradition.**

At oral arguments, the Appellant asserted that the last sentence of subsection (c), which was added in 2015 and states that the definition of "detainer" includes "extradition," means that a trial court is without jurisdiction to enter a final forfeiture judgment while extradition is pending. However, the first sentence of subsection (c) requires that the "detainer" be filed "with the detaining authority." In this case, there was no proof that the extradition was filed against the Defendant with the detaining authority.

The evidence presented by the Appellant at the final forfeiture hearing was that Special Agent Frye had a "general location" for the Defendant in Mexico in August 2022 and that a PAW for the Defendant's arrest was still pending. Furthermore, the proof showed that although the district attorney general's office had submitted an extradition request to the DOJ, the Defendant was not in custody and remained a flight risk. Under the Appellant's theory, the State's submission of an international extradition request to the DOJ requires an extension of time prior to final forfeiture even though a defendant's exact location is unknown and the defendant remains at large. We disagree with the Appellant and conclude that our statutory scheme does not require an extension of time under such circumstances. Accordingly, the trial court did not abuse its discretion when it denied the Appellant's motion to set aside final forfeiture.

## CONCLUSION

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

_____
JOHN W. CAMPBELL, SR., JUDGE